## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION** |
| | ) | |
| **v.** | ) | **No. 22-cv-3568** |
| | ) | |
| **HOUSING AUTHORITY OF NEW ORLEANS;** | ) | **Section "   "** |
| **COLUMBIA RESIDENTIAL, LLC;** | ) | |
| **ENTERPRISE COMMUNITY PARTNERS, INC.;** | ) | |
| **HRI PROPERTIES, LLC; KBK ENTERPRISES,** | ) | |
| **LLC; L+M DEVELOPMENT PARTNERS, INC.;** | ) | |
| **MCCORMACK BARON SALAZAR, INC.; and** | ) | |
| **PROVIDENCE COMMUNITY HOUSING,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

The United States of America alleges as follows:

### NATURE OF THE ACTION

1. The United States brings this action to enforce the Fair Housing Act, as amended ("FHA"), 42 U.S.C. §§ 3601-3619; the FHA's implementing regulations, 24 C.F.R. §§ 100.200-205; Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12181-12189; and the ADA Standards for Accessible Design ("ADA Standards"), 28 C.F.R. Pt. 36 Appendices A & D.

2. Following Hurricane Katrina and the subsequent levee failures, the Housing Authority of New Orleans ("HANO") undertook a significant redevelopment program to demolish, replace, and modernize its public housing developments.  Seven of the eight

properties at issue in this lawsuit were developed as part of that program, using federal funds administered by the Department of Housing and Urban Development.

3. The Defendants – HANO and seven private developers working in conjunction with it – discriminated against persons with disabilities by designing and constructing eight multifamily properties, comprising over 3,600 total rental units and over 1,250 units covered by the FHA's accessibility requirements, without the accessibility features required by the FHA and the ADA.

4. Beginning in 2004 and continuing to the present, the Defendants designed and constructed the eight Subject Properties – Fischer Senior Village, River Garden, Columbia Parc, Harmony Oaks, Faubourg Lafitte, Marrero Commons, Bienville Basin, and Guste III – with egregious barriers to accessibility, including steps to building entrances and unit entries, bathroom and closet doors that are too narrow for persons using wheelchairs to pass through them, thermostats and outlets that are out of reach of persons using wheelchairs, kitchens and bathrooms that not usable by persons using wheelchairs because they lack sufficient maneuvering space, and other barriers that prevent persons with disabilities from accessing, using, and enjoying the full benefits of living in these communities.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345, 42 U.S.C. § 3614(a) and 42 U.S.C. § 12188(b)(1)(B).

6. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims alleged in this action occurred in this District.

## SUBJECT PROPERTIES

7.  The Defendants each participated in the design and construction of one or more of the following eight Subject Properties: Fischer Senior Village, River Garden, Columbia Parc, Harmony Oaks, Faubourg Lafitte, Marrero Commons, Bienville Basin, and Guste III.  Each of the Subject Properties contains "covered multifamily dwellings" within the meaning of 42 U.S.C. § 3604(f)(7).  Ground-floor units in buildings containing four or more units, and all units in elevator buildings, are "covered dwelling units" subject to the accessibility requirements of the FHA.

8. The leasing offices and the parking and restrooms associated with the leasing offices at River Garden, Columbia Parc, Harmony Oaks, Marrero Commons and Bienville Basin are places of public accommodation within the meaning of the ADA, 42 U.S.C. § 12181(7)(E) and 28 C.F.R. § 36.104, and are required to meet the accessibility requirements of the ADA Standards.

9.  William J. Fischer is a multifamily housing development with approximately 326 units located at 1915 LB Landry Avenue, New Orleans, Louisiana 70114.  Fischer Senior Village is a 62-years-old and older apartment complex with 100 units located within the William J. Fischer Development.  Fischer Senior Village contains 84 covered dwelling units, located within four two-story elevator buildings with 68 units, and four one-story, garden-style, four-plex buildings with 16 units.  The common use areas at Fischer Senior Village include a community center with activity rooms and a computer lounge, a community garden, gazebos, trash dumpsters, mailboxes, and parking.  HANO designed and constructed Fischer Senior Village for first occupancy in approximately 2004.

10.  River Garden is a multifamily housing development with a total of 606 units.  It is composed of two adjacent sections: River Garden Felicity, located at 913 Felicity Street, New

Orleans, Louisiana 70130, and River Garden St. Andrew, located at 530 St. Andrew Street, New Orleans, Louisiana 70130.  River Garden Felicity has a total of 296 units, 50 of which are ground-floor units in four-plex buildings and are covered dwelling units.  River Garden St. Andrew has a total of 310 units, 201 of which are covered dwelling units.  The covered dwelling units at River Garden St. Andrew consist of 106 ground-floor units in 29 three-story, townhouse-style buildings, and 95 units in two four-story elevator buildings.  The public and common use areas at River Garden include two leasing offices, mailboxes, pet posts which provide waste bags and a trash bin for residents with dogs, trash facilities, and parking.  Defendants HANO and HRI Properties, LLC designed and constructed River Garden for first occupancy in approximately 2009.[1]

11.  Columbia Parc is a multifamily development with a total of 702 units located at 1400 Milton Street, New Orleans, Louisiana 70122.  There are 221 covered dwelling units consisting of 99 ground-floor units within three-story, garden-style buildings with four or more units, and a three-story elevator building for residents 62-years-old and older containing 111 units.  The public and common use areas at Columbia Parc include two leasing offices, a community building, two movie theaters, two fitness centers, a swimming pool with splash park, community rooms, community kitchens, a playground, two business centers, barbeque areas, entertainment areas, mail centers, pet posts, trash dumpsters and parking.  Defendants HANO and Columbia Residential, LLC designed and constructed Columbia Park for first occupancy in phases from approximately 2010 to 2013.

---

[1] Five buildings at River Garden are historic rehabilitations of the original St. Thomas housing development.  They were built for first occupancy prior to the time the FHA's accessibility requirements became law, and, consequently, are not at issue in this lawsuit.

12.   Harmony Oaks is a multifamily development with a total of 460 units located at 3320 Clara Street, New Orleans, Louisiana 70113.  The property has 86 covered dwelling units consisting of one elevator building with 40 units, and 17 buildings with four or more units without elevators that contain 41 ground-floor units.  The public and common use areas at Harmony Oaks include a leasing office, swimming pool, fitness center, business center, recreation room and clubhouse, playground, and parking.  Defendants HANO and McCormack Baron Salazar, Inc. designed and constructed the property for first occupancy in phases beginning in approximately 2010.[2]

13.   Faubourg Lafitte is a multifamily development with a total of 465 units located at 2200 Lafitte Street, New Orleans, Louisiana 70119.  Faubourg Lafitte has 155 covered dwelling units consisting of a three-story elevator building for residents who are 62-years-old and older that contains 100 units, and 20 garden-style buildings that contain 55 ground-floor units.  The public and common use areas at Faubourg Lafitte include a community garden, mail centers, picnic areas and parking.  Defendants HANO, Enterprise Community Partners, Inc., L+M Development Partners, Inc., and Providence Community Housing designed and constructed the property for first occupancy in phases from approximately 2011 to 2016.

14.   Marrero Commons is a multifamily development with a total of 410 units located at 1100 South Tonti Street, New Orleans, Louisiana 70125.  The property has 15 four-plexes with a total of 15 ground-floor covered dwelling units.  The public and common use areas at Marrero Commons include a leasing office, community room, computer lab, fitness center, patio

---

[2] One building at Harmony Oaks is a historic rehabilitation of the original CJ Peete/Magnolia housing development building.  It was built for first occupancy prior to the time the FHA's accessibility requirements became law, and, consequently, is not at issue in this lawsuit.

entertainment area, mail centers, and parking.  Defendants HANO, McCormack Baron Salazar, Inc., and KBK Enterprises, LLC designed and constructed the property for first occupancy in phases from approximately 2013 to 2016.

15.  Bienville Basin is a multifamily development with a total of 513 new-construction units located at 401 Treme Street, New Orleans, Louisiana 70112.[3]  The property has 418 covered dwelling units consisting of six elevator buildings that contain 327 units, and fifteen garden- and townhouse-style buildings with four or more units that contain more than 91 ground-floor units.  The public and common use areas at Bienville Basin include a leasing office, community garden, community library, business center, fitness center, outdoor dining area with picnic tables and barbeque grills, playground, pet posts, and parking.  Defendants HANO and HRI Properties, LLC designed and constructed Bienville Basin for first occupancy in phases from approximately 2015 to 2019.

16. Guste Homes is a multifamily housing development composed of three sections: Guste I, II, and III.  Guste I and II were developed in 2012 and do not contain covered dwelling units.  Guste III has 155 units, including 65 covered dwelling units.  It is located at 1301 Simon Bolivar Avenue, New Orleans, Louisiana 70113.  Guste III's 65 covered dwelling units consist of one four-story elevator building with 49 units and eight four-plexes containing 16 ground floor units.  The common use areas at Guste III include a community room, vending machines, shared patios, trash facilities, mail centers, and parking.  Defendant HANO designed and constructed Guste III for first occupancy in phases from approximately 2015 to 2019.

---

[3] Bienville Basin also has fourteen buildings, containing 169 units, that are historic rehabilitations of the original Iberville housing development buildings.  They were built for first occupancy prior to the time the FHA's accessibility requirements became law, and, consequently, are not at issue in this lawsuit.  They are not included in the description of Bienville Basin contained in this paragraph.

17. Each of the Subject Properties is a "dwelling" within the meaning of 42 U.S.C. § 3602(b).

**DEFENDANTS**

18. Defendant Housing Authority of New Orleans is a public housing agency established by the City of New Orleans, pursuant to La. Rev. Stat. § 40:393, to provide affordable housing opportunities for low-income residents of the City of New Orleans.  It is governed by a nine-member board of commissioners appointed by the Mayor of the City of New Orleans in accordance with La. Rev. Stat. § 40:531.

19. HANO participated in the design and construction of each of the eight Subject Properties.  It developed Fischer Senior Village and Guste III, and it contracted with one or more of the other Defendants to develop the remaining six Subject Properties.  HANO owns Fischer Senior Village and Guste III, and has control over the remaining six Subject Properties, including through its ownership of the land on which the properties are built and through a ground lease to the entity that owns the improvements on the property.[4]

20. Defendant Columbia Residential, LLC ("Columbia") is a Georgia limited liability company that develops and manages affordable multifamily housing.  Columbia developed Columbia Parc for HANO and participated in the design and construction of that property.  Columbia manages Columbia Park.

21. Defendant Enterprise Community Partners, Inc. ("Enterprise") is a Maryland non-profit corporation that develops and finances multifamily housing.  Enterprise developed Faubourg Lafitte for HANO together with Defendants L+M Development Partners, Inc. and

---

[4] Under a ground lease, HANO, as landlord, and a tenant enter into a lease agreement for land for a specified term.  The tenant makes improvements on the land; here, by designing and constructing multifamily housing.  At the expiration of the lease, the improvements revert back to HANO.

Providence Community Housing, and participated in the design and construction of that property.

22.   Defendant HRI Properties, LLC ("HRI") is a Louisiana limited liability company that develops and manages commercial and residential property.  HRI developed Bienville Basin and River Garden for HANO, and participated in the design and construction of those two properties.  HRI currently manages Bienville Basin and River Garden.

23.   Defendant KBK Enterprises, LLC ("KBK") is an Ohio- and Pennsylvania-based limited liability company that develops residential and commercial real estate.  KBK developed Marrero Commons for HANO, together with Defendant McCormack Baron Salazar, Inc., and participated in the design and construction of that property.

24.   Defendant L+M Development Partners, Inc. ("L+M") is a New York corporation that develops, builds, and manages multifamily housing.  L+M developed Faubourg Lafitte for HANO, together with Enterprise and Providence Community Housing, and participated in the design and construction of that property.

25.   Defendant McCormack Baron Salazar, Inc. ("McCormack") is a Missouri corporation that develops, builds, and manages multifamily housing.  McCormack developed Harmony Oaks for HANO, and was involved with the design and construction of that property. McCormack also developed Marrero Commons for HANO, together with KBK, and participated in the design and construction of that property.  McCormack manages Harmony Oaks, Faubourg Lafitte, and Marrero Commons.

26.   Defendant Providence Community Housing ("Providence") is a Louisiana non-profit corporation that develops affordable housing.  Providence developed Faubourg Lafitte for

HANO, together with Enterprise and L+M, and participated in the design and construction of that property.

## ALLEGATIONS RELATED TO ACCESSIBILITY BARRIERS

### Fair Housing Act Allegations

27.  As designed and constructed, the covered multifamily dwellings at the Subject Properties have inaccessible features that do not meet the requirements of 42 U.S.C. § 3604(f)(3)(C) or 24 C.F.R. § 100.205(c), including the following:

    a.   the public use and common use portions of the dwellings are not readily accessible to and usable by persons with disabilities;[5] and/or

    b.   not all doors designed to allow passage into and within the dwellings are sufficiently wide to allow passage by persons in wheelchairs; and/or

    c.   not all premises within such dwellings contain the following features of adaptive design:

        i.   an accessible route into and through the dwelling;

        ii.   light switches, electrical outlets, thermostats, and other environmental controls in accessible locations; and/or

        iii.   reinforcements in bathroom walls to allow later installation of grab bars; and/or usable kitchens and bathrooms, such that an individual using a wheelchair can maneuver about the space.

---

[5] Throughout this Complaint, the United States uses the term "disability" instead of "handicap."  For purposes of the FHA, the terms have the same meaning.  *See Bragdon v. Abbott*, 524 U.S. 624, 631 (1998) (definition of "disability" under the Americans with Disabilities Act taken almost verbatim from definition of "handicap" under the FHA).

28. The following is an illustrative, but not exhaustive, list of inaccessible features created and caused by Defendants in designing and constructing the Subject Properties.[6]

**Fischer Senior Village**

29.  The inaccessible features at Fischer Senior Village include, but are not limited to:

    a. a lack of accessible routes from units to the common areas that serve the units, such as the community center, community garden, gazebos, trash dumpsters and mailboxes, because no pedestrian route is provided, or because there are excessive running or cross slopes,[7] steps, or other barriers on the route provided;

    b. accessibility barriers at amenities, such as mailboxes mounted at heights too high for persons using wheelchairs to use;

    c. running and cross slopes at the approach walkways leading to unit entry doors that are too steep to allow people using wheelchairs to traverse safely;

    d. columns that encroach into the maneuvering space at unit entry doors;

    e. bathroom doors in units that are too narrow for a person using a wheelchair to pass through;

    f. abrupt level changes at bathroom doorways that prevent people using wheelchairs, walkers or other mobility devices from passing through safely;

---

[6] References to "units" in the following section are to units subject to the accessibility requirements of the FHA as set forth in 42 U.S.C. § 3604(f)(7).

[7] A "running slope" is "the slope that is parallel to the direction of travel," and a "cross slope" is a slope that is perpendicular to the direction of travel.  Running and cross slopes are measured in a ratio of rise to run (or height to length).

g.  electrical outlets in unit kitchens and thermostats that are mounted out of reach range of persons using wheelchairs;

h.  insufficient space in unit kitchens to allow people using wheelchairs to maneuver about the space and use the fixtures and appliances;

i.  insufficient space in unit bathrooms to allow people using wheelchairs to safely transfer to and from the toilets, to and from the showers, or to use the sinks; and

j.  lack of reinforcements in the bathroom walls to allow for the future installation of grab bars.

**River Garden**

30. The inaccessible features at River Garden include, but are not limited to:

a.  a lack of accessible routes from units to the common areas that serve the units, such as the trash dumpsters, mailboxes, parking, and pet posts, because no pedestrian route is provided, there are excessive running or cross slopes and/or steps on the route provided, doors require too much force to open, or there are other barriers;

b.  accessibility barriers at amenities, such as mailboxes mounted at heights too high for persons using wheelchairs to use, and designated parking spaces without an accessible access aisle or signage;

c.  accessibility barriers on the sidewalk routes leading to unit entry and building entrance doors, including running and cross slopes that are too steep to allow people using wheelchairs to traverse safely, steps, and other barriers;

d.  steps at the exteriors of unit entry doors;

e.  knob-style hardware on unit entry doors that makes it difficult to grasp or twist;

f.  bathroom and closet doors in units that are too narrow for a person using a wheelchair to pass through;

g.  abrupt level changes at unit entry doors and to balconies that prevent people using wheelchairs, walkers or other mobility devices from passing through safely;

h.  electrical outlets, thermostats, light switches and alarm controls in units that are mounted out of reach range of a person using a wheelchair;

i.  insufficient space in kitchens in units to allow people using wheelchairs to maneuver about the space and use the fixtures and appliances;

j.  insufficient space in bathrooms in units for persons using wheelchairs to maneuver or to safely transfer to and from the toilets; and

k.  lack of reinforcements in the bathroom walls to allow for the future installation of grab bars, and bathtubs that are a one-piece solid material that extends up the walls surrounding the tub that precludes the later installation of grab bars.

**Columbia Parc**

31.  The inaccessible features at Columbia Parc include, but are not limited to:

a.  a lack of accessible routes from units to the common areas that serve the units, such as the trash dumpsters, pet posts, and barbecue areas, because no pedestrian route is provided;

b.  accessibility barriers on the route to common areas where there is one provided, such as excessive running or cross slopes; wall-mounted objects, such as paper towel dispensers and intercom call boxes that protrude excessively without cane-detectable barriers and could injure persons with visual impairments; doors that require too much force to open; or other barriers;

c.  accessibility barriers at amenities, such as mailboxes mounted at heights too high for persons using wheelchairs to reach;

d.  accessibility barriers on the route to the elevator building entrance, such as an excessively sloped ramp without handrails, and an abrupt level change at the building entrance that prevents persons using wheelchairs or other mobility-assistance devices from passing through safely;

e.  steps at the street-side building entrances;

f.  accessibility barriers on the sidewalk routes leading to unit entry doors, including running and cross slopes that are too steep to allow people using wheelchairs to traverse safely, changes in level, and other barriers;

g.  closet doors in units that are too narrow for a person using a wheelchair to pass through;

h.  routes into and through units with accessibility barriers, including abrupt level changes at front entry doors and to patios that prevent people using wheelchairs, walkers or other mobility devices from passing through safely, and unit entry doors with automatic closing mechanisms that require excessive force to open and/or close too quickly;

i.   electrical outlets and thermostats in units that are mounted out of reach range of a person using a wheelchair;

j.   insufficient space in kitchens for persons using wheelchairs to maneuver about the space and use the fixtures and appliances; and

k.   insufficient space in bathrooms for persons using wheelchairs to maneuver and use the fixtures.

**Harmony Oaks**

32.  The inaccessible features at Harmony Oaks include, but are not limited to:

a.   a lack of accessible routes from units to the common areas that serve the units, such as the trash dumpsters and pet posts, because no pedestrian route is provided; and accessibility barriers on the route to common areas, such as the swimming pool, common restrooms, and mail centers, because of excessive running or cross slopes, steps, gates that are inaccessible to persons with disabilities, insufficient space for a person using a wheelchair to maneuver, or other barriers;

b.   accessibility barriers at amenities, such as common restrooms without sufficient maneuvering space for persons using wheelchairs to use the fixtures and toilets mounted too close to the wall for persons using wheelchairs to transfer to and from the toilet;

c.   accessibility barriers at amenities, such as mailboxes mounted too high for persons using wheelchairs, and wall-mounted objects such as light fixtures and towel dispensers that protrude excessively without cane-detectable barriers, which could injure persons with visual impairments;

    d.   accessibility barriers on the routes to building entrances, such as steps and excessive slopes;

    e.   accessibility barriers on the sidewalk routes leading to unit entry doors, including running and cross slopes that are too steep to allow people using wheelchairs to traverse safely, changes in level, and other barriers;

    f.   accessibility barriers on routes into and through units, including abrupt level changes at front entry doors and to patios, which severely impact the ability of people using wheelchairs to pass through;

    g.   electrical outlets, light switches, and thermostats in units that are mounted out of reach range of a person using a wheelchair;

    h.   insufficient space in kitchens for persons using wheelchairs to maneuver and use the fixtures and appliances;

    i.   insufficient space in bathrooms for persons using wheelchairs to maneuver and use the sink; and

    j.   bathtubs that are a one-piece solid material that extends up the walls surrounding the tub that precludes the later installation of grab bars.

**Faubourg Lafitte**

33.  The inaccessible features at Faubourg Lafitte include, but are not limited to:

    a.   a lack of accessible routes from units to the common areas that serve units due to steps or other changes in level, excessive running or cross slopes, excessively high thresholds, wall-mounted shelves in interior hallways that protrude excessively without a cane-detectable barrier and could injure persons with visual impairments, or other barriers;

b.   accessibility barriers at amenities, such as trash rooms that lack sufficient space for a person using a wheelchair to turn around;

c.   accessibility barriers on the sidewalk routes leading to unit entry and building entrance doors, including running and cross slopes that are too steep to allow people using wheelchairs to traverse safely, steps, and other barriers;

d.   steps at the exteriors of building entrances;

e.   routes into and through units that include abrupt level changes at porches, severely impacting the ability of people using wheelchairs and other mobility assistance devices to traverse safely;

f.   electrical outlets, thermostats, and light switches in units that are mounted out of reach range of a person using a wheelchair;

g.   insufficient maneuvering space in kitchens in units to allow people using wheelchairs to reach and use appliances and fixtures; and

h.   insufficient space in bathrooms in units for persons using wheelchairs to maneuver or to safely transfer to and from the toilets.

**Marrero Commons**

34.  The inaccessible features at Marrero Commons include, but are not limited to:

a.   a lack of accessible routes from units to the common areas that serve the units, such as the clubhouse, trash dumpsters, and mailboxes, because no pedestrian route is provided, or because there are excessive running or cross slopes, steps, or other barriers on the route provided;

b.   accessibility barriers at amenities, such as restrooms in the clubhouse with abrupt
     level changes at the entry door, toilets too close to the wall for persons using
     wheelchairs to safely transfer to and from, a lack of grab bars, and other barriers;

c.   accessibility barriers on the sidewalk routes leading to unit entry doors, including
     running and cross slopes that are too steep to allow people using wheelchairs to
     traverse safely, steps, and other barriers;

d.   steps at the exteriors of unit entry doors;

e.   front entry doors and balcony doors with abrupt level changes, severely impacting
     the ability of people using wheelchairs or other mobility-assistance devices to
     pass through safely;

f.   electrical outlets in units that are mounted out of reach range of a person using a
     wheelchair;

g.   insufficient space in bathrooms in units for persons using wheelchairs to use the
     sink or to safely transfer to and from the toilets; and

h.   lack of reinforcements in the bathroom walls to allow for the future installation of
     grab bars.

**Bienville Basin**

35.  The inaccessible features at Bienville Basin include, but are not limited to:

a.   a lack of accessible routes from units to the common areas that serve the units,
     such as the trash dumpsters, mailboxes, parking, and pet posts, because no
     pedestrian route is provided or because there are excessive running or cross
     slopes, steps on the route provided, gates that lack maneuvering space on the

latch-side of the gate to allow a person using the wheelchair to navigate through the gate, or other barriers;

b.   accessibility barriers at amenities, such as mailboxes mounted too high for persons using wheelchairs to use, and designated parking spaces with insufficient access aisles;

c.   steps at the exteriors of unit entry and building entrance doors;

d.   accessibility barriers on the sidewalk routes leading to unit entry and building entrance doors, including running and cross slopes that are too steep to allow people using wheelchairs to traverse safely, and other barriers;

e.   balcony doors in units that are too narrow for a person using a wheelchair to pass through;

f.   front entry doors and doors to balconies with abrupt level changes, severely impacting the ability of people using wheelchairs or other mobility-assistance devices to traverse safely;

g.   electrical outlets that are mounted out of reach range of a person using a wheelchair;

h.   insufficient space in bathrooms in units for persons using wheelchairs to maneuver and use the fixtures, or to safely transfer to and from the toilets; and

i.   lack of reinforcements in the bathroom walls to allow for the future installation of grab bars.

**Guste III**

36.  The inaccessible features at Guste III include, but are not limited to:

a.  a lack of accessible routes from units to the common areas that serve the units, such as the trash dumpsters, trash cans, and mailboxes, because no pedestrian route is provided or because there are excessive running slopes or cross slopes, or steps on the route provided, doors that require too much force to open, or other barriers;

b.  accessibility barriers at amenities, such as mailboxes mounted too high for persons using wheelchairs to use, and common area restrooms with improperly placed toilets and grab bars, which makes it more difficult for a person using a wheelchair to safely transfer to or from the toilet;

c.  steps at the exteriors of unit entry doors;

d.  accessibility barriers on the sidewalk routes leading to unit entry and building entrance doors, including running and cross slopes that are too steep to allow people using wheelchairs to traverse safely, steps, and other barriers;

e.  balcony and closet doors in units that are too narrow for a person using a wheelchair to pass through;

f.  front entry doors and balconies with abrupt level changes, severely impacting the ability of people using wheelchairs and other mobility-assistance devices to traverse safely;

g.  electrical outlets and thermostats in units that are mounted out of reach range of a person using a wheelchair;

h.  insufficient space in bathrooms in units for persons using wheelchairs to use the tub or to safely transfer to and from the toilets; and

i.   lack of reinforcements in the bathroom walls to allow for the future installation of

grab bars, and bathtubs that are a one-piece solid material that extends up the

walls surrounding the tub that precludes the later installation of grab bars.

## ADA Allegations

37.   The leasing offices and the parking and restrooms associated with the leasing offices

at River Garden, Columbia Parc, Harmony Oaks, Marrero Commons, and Bienville Basin were

not designed and constructed so that they are readily accessible to and usable by individuals with

disabilities, as required by the ADA, 42 U.S.C. § 12183(a)(1).  These leasing offices fail to

comply with the ADA Standards.

38.   The inaccessible features at the leasing offices at River Garden, Columbia Parc,

Harmony Oaks, Marrero Commons, and Bienville Basin include, but are not limited to:

a.   no accessible route into the leasing offices at all five properties due to excessive

slopes, steps, circuitous routes that do not coincide with the general circulation

paths, lack of pedestrian routes, doors that require excessive force to open or door

hardware that requires grasping and twisting, abrupt level changes, and other

inaccessible features;

b.   accessibility barriers within the leasing offices, including reception desks that are

too high (Marrero Commons), objects out of reach range of a person using a

wheelchair (Columbia Parc, River Garden, Harmony Oaks), water fountains that

lack accessibility features (Marrero Commons), protruding objects such as call

boxes, cabinets, water fountains, and paper towel dispensers in the path of

circulation that pose a hazard to visually impaired persons (Columbia Parc,

Marrero Commons), and other inaccessible features;

c.   public restrooms at four of the properties (Columbia Parc, Harmony Oaks, Marrero Commons, Bienville Basin) with barriers that severely impact the ability of wheelchair users to use the facilities, including: toilets mounted too close to the wall, with insufficient grab bars, and without sufficient maneuvering space, all of which pose barriers for a person using a wheelchair to maneuver to and safely transfer to and from the toilet; a lack of insulation covering exposed pipes under sinks and a lack of knee space at vanities, which pose a barrier to persons in wheelchairs accessing the sink without the risk of burning their legs on uninsulated hot water pipes underneath the sink; fixtures such as mirrors, soap dispensers, and coat hooks mounted too high for persons using wheelchairs to use; and improperly placed signage without tactile features which pose a barrier to persons with visual impairments to identify and use the restroom; and

d.   no designated accessible parking provided at Harmony Oaks; designated parking at Bienville Basin that lacks a sufficient access aisle because the access aisle is blocked by concrete columns and bollards; and designated parking at River Garden with excessively sloped access aisles.

**FAIR HOUSING ACT CLAIMS**

39.  The United States re-alleges and incorporates by reference the allegations set forth above.

40.  The conduct of the Defendants described above violates 42 U.S.C. §§ 3604(f)(1), (f)(2), and (f)(3)(C).

41. To the extent a State or unit of general local government has incorporated into its laws the requirements set forth in 42 U.S.C. § 3604(f)(3)(C), the above properties have

deficiencies that did not comply with such requirements at the time they were designed and constructed.

42. The Defendants' conduct described above constitutes:

    a.   a pattern or practice of resistance to the full enjoyment of rights granted by the FHA, under 42 U.S.C. § 3614(a); and

    b.   a denial to a group of persons of rights granted by the FHA that raises an issue of general public importance, under 42 U.S.C. § 3614(a).

43. Persons who have been the victims of the Defendants' discriminatory housing practices are aggrieved persons under 42 U.S.C. § 3602(i), and may have suffered injuries because of the conduct described above.

44. The Defendants' conduct described above was intentional, willful, and taken in disregard of the rights of others.

**ADA CLAIMS**

45. The United States re-alleges and incorporates by reference the allegations set forth above.

46. Defendants HANO, Columbia, HRI, McCormack and KBK ("the ADA Defendants") violated Title III of the ADA by designing and constructing places of public accommodation, including leasing offices for multifamily dwellings, without ensuring that these places of public accommodation are readily accessible to persons with disabilities to the maximum extent feasible, as required by 42 U.S.C. § 12183(a)(1).

47. The conduct of the ADA Defendants described above constitutes:

    a.   a pattern or practice of discrimination within the meaning of 42 U.S.C. § 12188(b)(1)(B)(i) and 28 C.F.R. § 36.503(a); and

     b.   unlawful discrimination that raises an issue of general public importance within

          the meaning of 42 U.S.C. § 12188(b)(1)(B)(ii) and 28 C.F.R. § 36.503(b).

    48.  Persons who have been victims of the ADA Defendants' discriminatory conduct are

aggrieved as defined in 42 U.S.C. § 12188(b)(2)(B), and may have suffered injuries because of

the conduct described above.

    49. The conduct of the ADA Defendants described above was intentional, willful, and

taken in disregard of the rights of others.

**REQUEST FOR RELIEF**

WHEREFORE, the United States requests that the Court enter an order that:

     a.   Declares that the Defendants' conduct, as alleged in this Complaint, violates the

          FHA;

     b.   Declares that the conduct of the ADA Defendants, as alleged in this Complaint,

          violates the ADA;

     c.   Enjoins the Defendants, their officers, employees, agents, successors, and all other

          persons in active concert or participation with any of them from:

          i.   failing or refusing to conduct a survey of the covered dwelling units and

              public and common-use areas at the above properties and other covered

              multifamily properties designed and/or constructed by the Defendants to

              determine all inaccessible features that exist in violation of the FHA;

         ii.   failing or refusing to bring the covered dwelling units and public and common

              use areas at covered multifamily properties in which each defendant was or is

              involved in the design and/or construction into full compliance with the FHA;

23

iii. failing or refusing to conduct FHA compliance surveys to determine whether the retrofits ordered in paragraph (i) above or otherwise performed comply with the FHA;

iv. designing or constructing any covered multifamily dwellings and public and common use areas in the future that do not comply with the FHA; and

v. failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the victims of the Defendants' unlawful practices to the position they would have been in but for the discriminatory conduct.

d. Enjoins the ADA Defendants, their officers, employees, agents, successors, and all other persons in active concert or participation with any of them from:

i. failing or refusing to conduct a survey of the public and common-use areas at the above properties and other covered multifamily properties designed and/or constructed by the Defendants to determine all inaccessible features that exist in violation of the ADA;

ii. failing or refusing to bring the public accommodations, including leasing offices, bathrooms for use by prospective renters, and other public use areas, at covered multifamily properties in which each defendant was or is involved in the design or construction, into full compliance with the ADA and the ADA Standards;

iii. failing or refusing to conduct ADA compliance surveys to determine whether the retrofits ordered in paragraph (i) above or otherwise performed comply with ADA and the ADA Standards;

     iv.  designing or constructing any public accommodations in the future that do not comply with the ADA and the ADA Standards; and

     v.  failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the victims of the Defendants' unlawful practices to the position they would have been in but for the discriminatory conduct.

e.  Enjoins the Defendants from engaging in conduct that impedes any retrofits required to bring the Subject Properties, including covered dwelling units and public and common use areas, into compliance with the FHA and the public accommodations areas into compliance with the ADA and the ADA Standards in a prompt and efficient manner while minimizing inconvenience to the residents and visitors at the properties;

f.  Awards monetary damages under 42 U.S.C. § 3614(d)(1)(B) and 42 U.S.C. § 12188(b)(2)(B) to all persons harmed by the Defendants' discriminatory practices; and

g.  Assesses a civil penalty under 42 U.S.C. § 3614(d)(1)(C) to vindicate the public interest against each defendant that participated in the design or construction of Faubourg Lafitte, Marrero Commons, Bienville Basin and Guste III.

The United States further prays for such additional relief as the interests of justice may require.

Dated: September 30, 2022

<table>
<tr><td></td><td>Respectfully submitted,</td></tr>
</table>

|  | Respectfully submitted, |
|---|---|
|  | MERRICK B. GARLAND<br>Attorney General |
| DUANE A. EVANS<br>United States Attorney<br>Eastern District of Louisiana | KRISTIN CLARKE<br>Assistant Attorney General<br>Civil Rights Division |
| */s/ Sandra Ema Gutierrez*<br>SANDRA EMA GUTIERREZ (LA No. 17888)<br>Assistant United States Attorney<br>U.S. Attorney's Office<br>Eastern District of Louisiana<br>650 Poydras Street, Suite 1600<br>New Orleans, LA 70130<br>Phone: (504) 680-3124<br>E-mail: Sandra.Gutierrez@usdoj.gov | */s/ Aurora Bryant*<br>SAMEENA SHINA MAJEED<br>Chief<br>TIMOTHY J. MORAN<br>Deputy Chief<br>AURORA BRYANT (LA No. 33447)<br>Trial Attorney<br>Housing and Civil Enforcement Section<br>Civil Rights Division<br>U.S. Department of Justice<br>150 M Street, NE<br>Washington, DC 20002<br>Phone: (202) 616-2602<br>Fax: (202) 514-1116<br>E-mail: aurora.bryant@usdoj.gov |
|  | Attorneys for Plaintiff<br>United States of America |