## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 22-cv-3568-LMA-DPC** |
| | ) | |
| **HOUSING AUTHORITY OF NEW ORLEANS;** | ) | **Section " I "** |
| **COLUMBIA RESIDENTIAL, LLC;** | ) | |
| **ENTERPRISE COMMUNITY PARTNERS, INC.;** | ) | |
| **HRI PROPERTIES, LLC; KBK ENTERPRISES,** | ) | |
| **LLC; L+M DEVELOPMENT PARTNERS, INC.;** | ) | |
| **MCCORMACK BARON SALAZAR, INC.; and** | ) | |
| **PROVIDENCE COMMUNITY HOUSING,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## CONSENT ORDER

### I.     INTRODUCTION

1.      The United States brought this action to enforce provisions of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601 - 3619, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181 - 12189.

2.      Specifically, the United States' Complaint alleges that Defendants Housing Authority of New Orleans ("HANO"), Columbia Residential, LLC ("Columbia"), Enterprise Community Partners, Inc. ("Enterprise"), HRI Properties, LLC ("HRI"), KBK Enterprises, LLC ("KBK"), L+M Development Partners, Inc. ("L+M"), McCormack Baron Salazar, Inc. ("McCormack"), and Providence Community Housing ("Providence") (collectively "Defendants") engaged in a pattern or practice of discrimination based on disability, or denied rights protected by the FHA to a group of persons, by failing to design and construct the following eight multifamily dwellings in New Orleans, Louisiana (the "Subject Properties") with

some features of accessible and adaptive design and construction required by subsections 804(f)(1), 804(f)(2) and 804(f)(3) of the FHA, 42 U.S.C. §§ 3604(f)(1), (f)(2), and (f)(3)(C): Fischer Senior Village, River Garden, Columbia Parc, Harmony Oaks, Faubourg Lafitte, Marrero Commons, Bienville Basin, and Guste III.

3.    The United States' Complaint further alleges that Defendants HANO, Columbia, HRI, KBK, and McCormack (together, "ADA Defendants") failed to design and construct some portions of River Garden, Columbia Parc, Harmony Oaks, Marrero Commons, and Bienville Basin that are places of public accommodation in a manner required by the ADA, 42 U.S.C. § 12183(a)(1).

4.    For purposes of this Consent Order, the United States and Defendants (collectively, the "Parties") agree that the Subject Properties are subject to the accessible design and construction requirements of the FHA, 42 U.S.C. §§ 3604(f)(1), (f)(2), and (f)(3)(C), and, with respect to the public accommodations at River Garden, Columbia Parc, Harmony Oaks, Marrero Commons, and Bienville Basin, the ADA, 42 U.S.C. § 12183(a)(1).

**A.    Defendants**

5.    As outlined in <u>Appendix A</u>, Defendants were each involved in the design and construction of one or more Subject Properties.

6.    Defendants deny the allegations asserted in the Complaint, including but not limited to the allegations that they engaged in a pattern or practice of discrimination based on disability, or denied rights protected by the ADA or the FHA to a group of persons, by allegedly failing to design and construct multifamily dwellings in New Orleans, Louisiana with the features of accessible and adaptive design and construction.

7.     By entering into this Consent Order, the Defendants do not admit that any Subject Property was designed or constructed in violation of any local, state or federal code, rule or regulation related to accessibility, including as the term "violation" is used in 42 U.S.C. § 3614(d)(1)(C)(ii) and/or 42 U.S.C. § 12188(b)(2)(C)(ii).

8.     This Consent Order is not an adverse fair housing settlement, an adverse civil rights settlement, or an adverse federal or state government proceeding and settlement.

9.     The United States agrees that it shall evaluate each individual Defendant separately in evaluating compliance with this Consent Order.

**B.     Relevant Requirements of the FHA**

10.     The FHA provides that residential buildings with an elevator consisting of four or more dwelling units, and ground-floor units in non-elevator residential buildings with four or more dwelling units that were designed and constructed for first occupancy after March 13, 1991 are "covered multifamily dwellings" and must include certain features of accessible and adaptive design to make such units accessible to or adaptable for use by a person with a disability. 42 U.S.C. §§ 3604(f)(3)(C) and (f)(7)(A)-(B). Units in elevator buildings containing four or more dwelling units, and ground-floor units in non-elevator buildings containing four or more dwelling units are referred to as "covered dwelling units."

11.     The accessible and adaptive design provisions of the FHA require that covered multifamily dwellings be designed and constructed in a manner that: (i) the public use and common use portions of such dwellings are readily accessible to and usable by persons with a disability; (ii) all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by persons with a disability using wheelchairs; (iii) all premises within such dwellings contain the following features of adaptive design: (I) an

accessible route into and through the dwelling; (II) light switches, electrical outlets, thermostats, and other environmental controls in accessible locations; (III) reinforcements in bathroom walls to allow later installation of grab bars; and (IV) usable kitchens and bathrooms such that an individual using a wheelchair can maneuver about the space. 42 U.S.C. § 3604(f)(3)(C). These features are referred to herein as the "Accessible Design Requirements."

12. For the purposes of this Consent Order, the Parties agree that parts or all of the Subject Properties were designed and constructed for first occupancy after March 13, 1991, and contain "covered multifamily dwellings" within the meaning of the FHA, 42 U.S.C. § 3604(f)(7)(A) and (B). As such, the covered dwelling units and the routes and public and common use areas that serve them must comply with the Accessible Design Requirements of 42 U.S.C. § 3604(f)(3)(C).

### C. Relevant Requirements of the Americans with Disabilities Act

13. The ADA, and the ADA Standards for Accessible Design, ADA Accessibility Guidelines for Buildings and Facilities, 28 C.F.R. pt. 36, app. A ("ADA Standards"), that have been issued by the U.S. Department of Justice to implement the design and construction requirements of Title III of the ADA also require that all "public accommodations" designed and constructed for first occupancy after January 26, 1993, and the goods, services, facilities, privileges, advantages, or accommodations of those public accommodations, be readily accessible to and usable by persons with disabilities in accordance with certain accessibility standards promulgated under that Act. 42 U.S.C. §§ 12182(a) and 12183(a)(1). A rental or sales office for an apartment complex is a "public accommodation" under the ADA. 42 U.S.C. § 12181(7)(E).

14. For the purposes of this Consent Order, the ADA Defendants agree that the rental offices for the Subject Properties at River Garden, Columbia Parc, Harmony Oaks, Marrero

Commons and Bienville Basin were designed and constructed for first occupancy after January 26, 1993, and therefore the rental offices and the facilities and privileges provided at those offices such as bathrooms and public parking are required to be designed and constructed in accordance with the ADA Standards.

D.     **Subject Properties**

15.     Fischer Senior Village is a 62-year-old and older multifamily apartment complex with 100 units located at 1915 LB Landry Avenue, New Orleans, Louisiana. The property contains 84 covered dwelling units, located within four two-story elevator buildings with 68 units, and four one-story, garden-style, four-plex buildings with 16 units. Fischer Senior Village has public and common use areas, including a community center with activity rooms and a computer lounge, gazebos, trash dumpsters, mailboxes, and parking.

16.     River Garden is a multifamily housing development with a total of 606 units.[1] It is composed of two adjacent sections: River Garden Felicity, located at 913 Felicity Street, New Orleans, Louisiana, and River Garden St. Andrew, located at 530 St. Andrew Street, New Orleans, Louisiana. River Garden Felicity has a total of 296 units, 52 of which are ground-floor units in four-plex buildings and are covered dwelling units. River Garden St. Andrew has a total of 310 units, 201 of which are covered dwelling units. The covered dwelling units at River Garden St. Andrew consist of 106 ground-floor units in 29 three-story, townhouse-style buildings, and 95 units in two four-story elevator buildings. River Garden has public and common use areas, including two leasing offices, mailboxes, pet posts, trash facilities, and parking.

---

[1] Five buildings at River Garden are historic rehabilitations of the original St. Thomas housing development. They were built for first occupancy prior to the time the FHA's accessibility requirements became law, and, consequently, are not at issue and are not covered by this Consent Order.

17.     Columbia Parc is a multifamily housing development with a total of 683 units located at 1400 Milton Street, New Orleans, Louisiana.  The property has 210 covered dwelling units consisting of 99 ground-floor units within three-story, garden-style buildings with four or more units, and a three-story elevator building for residents 62-years-old and older containing 111 units.   Columbia Parc has public and common use areas, including two leasing offices, a community building, two movie theaters, two fitness centers, a swimming pool with splash park, community rooms, community kitchens, a playground, two business centers, barbeque areas, entertainment areas, mail centers, pet posts, trash dumpsters, and parking.

18.     Harmony Oaks is a multifamily housing development with a total of 460 units located at 3320 Clara Street, New Orleans, Louisiana.[2]  The property has 81 covered dwelling units consisting of one elevator building with 40 units, and 17 buildings with four or more units without elevators that contain 41 ground-floor units.  Harmony Oaks has public and common use areas, including a leasing office, swimming pool, fitness center, business center, recreation room and clubhouse, playground, and parking.

19.     Faubourg Lafitte is a multifamily housing development with a total of 465 units located at 2200 Lafitte Street, New Orleans, Louisiana.  The property has 155 covered dwelling units consisting of a three-story elevator building for residents who are 62-years-old and older that contains 100 units, and 20 garden-style buildings with four or more units that contain 55 ground-floor units.  Faubourg Lafitte has public and common use areas, including mail centers, picnic areas, and parking.

---

[2] One building at Harmony Oaks is a historic rehabilitation of the original CJ Peete/Magnolia housing development building.  It was built for first occupancy prior to the time the FHA's accessibility requirements became law, and, consequently, is not at issue and is not covered by this Consent Order.

20.     Marrero Commons is a multifamily development with a total of 410 units located at 1100 South Tonti Street, New Orleans, Louisiana.  The property has 15 four-plexes with a total of 15 ground-floor covered dwelling units.  Marrero Commons has public and common use areas, including a leasing office, community room, computer lab, fitness center, patio entertainment area, mail centers, and parking.

21.     Bienville Basin is a multifamily development with a total of 513 new-construction units located at 401 Treme Street, New Orleans, Louisiana.[3]  The property has 418 covered dwelling units consisting of six elevator buildings that contain 327 units, and fifteen garden- and townhouse-style buildings with four or more units that contain 91 ground-floor units.  Bienville Basin has public and common use areas, including a leasing office, community garden, community library, business center, fitness center, outdoor dining area with picnic tables and barbeque grills, playground, pet posts, and parking.

22.     Guste III is a multifamily housing development with a total of 155 units located at 1301 Simon Bolivar Avenue, New Orleans, Louisiana.  Guste III's 65 covered dwelling units consist of one four-story elevator building with 49 units and eight four-plexes containing 16 ground floor units.  Guste III has common use areas, including a community room, vending machines, shared patios, trash facilities, mail centers, and parking.

---

[3] Bienville Basin also has fourteen buildings, containing 169 units, that are historic rehabilitations of the original Iberville housing development buildings.  They were built for first occupancy prior to the time the FHA's accessibility requirements became law, and, consequently, are not at issue.  They are not included in the description of Bienville Basin contained in this paragraph, and are not covered by this Consent Order.

### E. Consent of the Parties to this Consent Order

23. Each Defendant, to the extent such individual Defendant was involved in the design and construction of the respective Subject Property as set forth in Appendix A[4], agrees to address alleged design and/or construction deficiencies at the Subject Property in which such Defendant was involved in the design and construction in accordance with the terms set forth in this Consent Order and as required by the separately agreed upon retrofit protocols described herein. A Defendant shall not be responsible for modifying or ensuring retrofits related to a Subject Property, or for providing notice to tenants at a Subject Property, for which such Defendant was not involved in the design and construction of such Subject Property as set forth in Appendix A.

24. The Parties agree that this Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 3614(a) and 12188(b)(1)(B). The parties further agree that this controversy should be resolved without further proceedings and without an evidentiary hearing, trial, or a determination on the merits.

25. As indicated by the signatures appearing below, the Parties agree to the entry of this Consent Order.

**It is hereby ORDERED, ADJUDGED, and DECREED:**

### II. GENERAL INJUNCTION

26. Defendants and each of their officers, employees, agents, successors and assigns, and all other persons in active concert or participation with them who are subject to Defendants' control are enjoined from discriminating on the basis of disability as prohibited by the FHA, 42 U.S.C. §§ 3604(f)(1)–(3), and the ADA, 42 U.S.C. §§ 12182(a) and 12183(a)(1).

---

[4] As set forth in Appendix A, some Defendants were involved in the design and construction of some but not all of the Subject Properties.

27.     Defendants and each of their officers, employees, agents, successors and assigns, and all other persons in active concert or participation with them who are subject to Defendants' control are enjoined from interfering or preventing the retrofits ordered herein or the implementation or completion of this Consent Order.

28.     To the extent that they have the authority to do so, and in accordance with any applicable COVID-19 Proclamations (as defined in paragraph 101) or tenant notice requirements, Defendants agree to allow access to the public and common use areas of the Subject Properties, and access to covered dwelling units at the Subject Properties, for the purpose of planning, evaluating, and performing any action required under this Consent Order and for the purpose of interviewing or meeting with residents or tenants to aid in the implementation or completion of this Consent Order.

## III.    RETROFITS AT SURVEYED SECTIONS OF SUBJECT PROPERTIES

29.     The United States conducted onsite surveys of a representative number of accessible routes, public and common use areas, and covered dwelling units at sections of each of the Subject Properties ("the Surveyed Sections"), and identified various alleged accessibility barriers.

30.     Each Defendant agrees to perform retrofits sufficient to address the alleged accessibility issues described in Appendices B - K pertaining to its Subject Property in accordance with the retrofit plans set forth as Appendices B - K, collectively referred to herein as the "Surveyed Sections Retrofit Plan."

31.     If any architectural or engineering drawings are prepared as part of the retrofits, the individual Defendant shall provide such drawings to the United States for comment and approval within fourteen (14) days of their preparation. The United States shall provide its comments or

approval within thirty (30) days, which approval shall not be unreasonably withheld. Subject to the individual Defendant's agreement with the comments, the Defendant will incorporate those comments, if any, into any relevant architectural or engineering plans and resubmit those to the United States for approval. This process shall continue until the United States approves the plans in question. If the United States and respective Defendants cannot reach agreement after good faith efforts have been made, they may seek appropriate relief from the Court. If the United States fails to provide its comments or approval within thirty (30) days of Defendant's submission of the architectural or engineering drawings, the architectural or engineering drawings shall be deemed approved by the United States.

32.     As soon as reasonably practicable, but no later than thirty-six (36) months from the entry of this Consent Order, Defendant, to the extent an individual Defendant was involved in the design and construction of the respective Subject Property, will complete retrofits to all public and common use areas – i.e., all areas other than interiors of dwelling units – as specified in the Surveyed Sections Retrofit Plan.

33.     As soon as reasonably practicable, but no later than forty-two (42) months from the entry of this Order, Defendant, to the extent an individual Defendant was involved in the design and construction of the respective Subject Property, will complete all retrofits of the interiors of covered dwelling units at the Surveyed Sections in accordance with the Surveyed Sections Retrofit Plan. Defendants will modify such units no later than the first time that unit becomes vacant following the entry of this Order and before that unit is occupied by a new tenant or resident. Regardless of whether or not a vacancy arises for such retrofit, however, Defendants will complete the retrofits within forty-two (42) months from entry of this Order.

34.     Within thirty (30) days from the entry of this Order, Defendants will provide a notice regarding details of the retrofits that is substantially equivalent to <u>Appendix L</u> to residents of the covered dwelling units at the Surveyed Sections.

35.     Residents of the covered dwelling units at the Surveyed Sections may request in writing that the retrofits required by the Surveyed Sections Retrofit Plan be scheduled for their dwelling unit, and the requests will be granted by Defendants on a first-come, first-served basis. Defendants must complete the retrofits as promptly as practical, but not later than one hundred and eighty (180) days from the date on which the retrofits were requested by a resident provided, however, that should more than twenty-five percent (25%) of current residents at a Subject Property submit such requests within any thirty (30) day period, Defendants will have an additional ninety (90) days to complete the retrofits.

36.     An individual Defendant shall not be responsible for modifying or ensuring retrofits are completed at any Surveyed Sections of a Subject Property for which such individual Defendant had no involvement in the design and construction of such Subject Property, as set forth in Appendix A.

37.     An individual Defendant shall not be responsible for providing notice to tenants of any Subject Property for which such individual Defendant was not involved in the design and construction of such property, as set forth in Appendix A.

## IV.     INSPECTIONS AND RETROFITS AT UNSURVEYED SECTIONS OF SUBJECT PROPERTIES

### A.     Inspections at Unsurveyed Sections of Subject Properties

38.     Defendants agree to take the following actions with regard to the inspection of the parts of each of the Subject Properties, to the extent an individual Defendant was involved in the design and construction of the respective Subject Property as set forth in Appendix A, which have

not previously been surveyed as part of the United States' investigation (the "Unsurveyed Sections"):

    a.    Within thirty (30) days of the entry of the Order, Defendants shall contract with one or more qualified professionals ("Properties Surveyor") approved by the United States, such approval not to be unreasonably withheld or denied, to conduct an on-site survey in accordance with this Section and <u>Appendix M</u> ("Survey Protocol"), at each Subject Property's Unsurveyed Sections to identify alleged violations, if any, of the FHA, the ADA and the Uniform Federal Accessibility Standards ("UFAS"), where applicable.[5]    The Properties Surveyor will have expertise in the Accessible Design Requirements of the FHA and the accessibility requirements of the Guidelines, the ADA, the ADA Standards, ANSI A117.1-1986, and UFAS.

    b.    All surveys shall be completed within three (3) months of the date of the entry of this Consent Order.[6]

39.    The Properties Surveyor will prepare a written Property Survey Report for each Subject Property's Unsurveyed Sections which complies with <u>Appendix N</u> ("Property Survey Report Protocol").

---

[5]    The Rehabilitation Act of 1973, 29 U.S.C. § 794, as amended, requires that minimal guidelines for accessibility be met at federally owned and federally assisted properties. UFAS establishes the technical requirements of the Rehabilitation Act. Under UFAS, five percent of the total number of units at newly constructed and substantially altered federally assisted multifamily housing projects must comply with UFAS. The Subject Properties, all of which received federal funding, shall be surveyed to identify any alleged violations of UFAS, in addition to the FHA and ADA.

[6]  Defendants shall give the United States written notice of the surveys at least twenty-one (21) days prior to each survey and shall give the United States an opportunity to have its representatives present for each survey.

40.     The Properties Surveyor will send the Property Survey Report of each Subject Property's Unsurveyed Sections to counsel for the United States and the individual Defendants associated with the Subject Property as set forth in Appendix A as soon as practicable following each property survey, but in any event no later than thirty (30) days after the date of the survey.

41.     An individual Defendant shall not be responsible for surveying or ensuring surveying is completed at any Unsurveyed Sections of a Subject Property for which such individual Defendant had no involvement in the design and construction of such Subject Property, as set forth in Appendix A.

**B.      Retrofits at Unsurveyed Sections**

42.     For each Unsurveyed Section at which a Properties Surveyor identified one or more alleged violations, if any, in accordance with subsection A above, the provisions of § IV.C, *infra*, shall apply.

**C.       Agreement on Retrofits at Unsurveyed Sections**

43.     Each Defendant agrees to modify its Subject Property or Properties in accordance with a plan agreed to separately between each Defendant and the United States, referred to herein as the "Unsurveyed Sections Retrofit Agreement," which shall detail the actions to be taken in connection with the Subject Property under this Consent Order to ensure compliance with the FHA, and where applicable, the ADA.

44.     Within ninety (90) days of receipt of the Property Survey Report for each property, each Defendant(s) associated with the Subject Property will transmit to the United States a proposed Unsurveyed Sections Retrofit Agreement, as well as copies of the Surveyor's field notes and photographs taken during the survey pursuant to Appendix M.

45.     The Parties shall have ninety (90) days from receipt of a Defendant's draft

Unsurveyed Sections Retrofit Agreement to reach agreement on the final terms of an Unsurveyed Sections Retrofit Agreement. If the United States and respective Defendant cannot reach agreement after good faith efforts have been made, they may seek the Court's assistance. The effective date of the Unsurveyed Sections Retrofit Agreement shall be the date on which its terms were agreed to by the Parties or ordered by the Court, whichever is earlier.

46.     If any architectural or engineering drawings are prepared as part of modifying any Unsurveyed Sections, Defendants shall provide those drawings to the United States for comment and approval within fourteen (14) days of their preparation. The United States shall provide comments or approval within thirty (30) days. Subject to Defendant's agreement with such comments, Defendant shall incorporate those comments, if any, into any relevant architectural or engineering plans and resubmit those to the United States for approval. This process shall continue until the United States has no further comments on any retrofit architectural or engineering plans. If the United States and respective Defendant cannot reach agreement after good faith efforts have been made, they may seek appropriate relief from the Court. If the United States fails to provide either comments or approval within thirty (30) days of Defendant's submission of the architectural or engineering drawings, the architectural or engineering drawings shall be deemed acceptable to the United States.

### D.     Retrofits to Public and Common Use Areas of Unsurveyed Sections

47.     As soon as reasonably practicable, but by no later than thirty-six (36) months from the date of effective date of the Unsurveyed Sections Retrofit Agreement, Defendants, to the extent an individual Defendant was involved in the design and construction of the respective Subject Property as set forth in Appendix A, shall finish all actions required of the public and common use areas of that Unsurveyed Sections.

**E.     Retrofits to Covered Dwelling Unit Interiors at Unsurveyed Sections**

48.     As soon as reasonably practicable, but by no later than thirty-six (36) months from the effective date of the Unsurveyed Sections Retrofit Agreement or forty-two (42) months from the date of entry of this Consent Order, whichever is earlier, Defendants, to the extent an individual Defendant was involved in the design and construction of the respective Subject Property as set forth in Appendix A, shall finish all retrofits to the covered dwelling unit interiors in accordance with the Unsurveyed Sections Retrofit Agreement. Defendants will modify the interior of a covered multifamily dwelling at the Unsurveyed Sections no later than the first time that unit becomes vacant and before that unit is occupied by a new tenant or resident. Regardless of whether a vacancy arises for such retrofits, Defendants will complete them within the time periods set forth in this paragraph.

49.     Within thirty (30) days from the effective date of the Unsurveyed Sections Retrofit Agreement, Defendants, to the extent an individual Defendant was involved in the design and construction of the respective Subject Property as set forth in Appendix A, shall provide a notice that is substantially equivalent to <u>Appendix L</u> to the residents in covered dwelling units at the Unsurveyed Sections, except that Defendants need not provide such notice to tenants who already received a notice pursuant to Paragraph 34.

50.     Residents in Unsurveyed Sections may request retrofits in writing, and the requests shall be granted by each Defendant for its Subject Property on a first-come, first-served basis. Each Defendant shall complete the retrofits as promptly as practical, but not later than one hundred and eighty (180) days from the date on which the retrofits were requested by a resident, provided, however, that should more than twenty-five percent (25%) of residents residing in a covered unit at a Subject Property submit such requests within any thirty (30) day period, a Defendant will have

an additional ninety (90) days to complete the retrofits.

51.    An individual Defendant shall not be responsible for modifying or ensuring retrofits are completed at any Surveyed or Unsurveyed Sections of a Subject Property for which such individual Defendant was not involved in the design and construction of such Subject Property, as set forth in Appendix A.

## V.    INCONVENIENCE AND OVERNIGHT STAYS FOR MODIFYING UNIT INTERIORS AT SUBJECT PROPERTIES

52.    Defendants will endeavor to minimize inconvenience to residents in scheduling and performing retrofits required by this Consent Order at the Subject Properties.

53.    In the event that a resident of a unit scheduled to undergo retrofits incurs undue inconvenience or hardship (defined as a dislocation from the unit for more than twenty-four (24) hours consecutively), Defendants may provide alternate accommodations in another equivalent, furnished unit at the Subject Property at which the resident(s) reside.  An equivalent unit is one with at least the number of bedrooms as the resident's original unit.  If alternate accommodations are provided under this paragraph, Defendants will pay each household the applicable government per diem rate for food for the local area (as available at www.gsa.gov – click on "per diem rates" under travel) for each 24-hour period of undue inconvenience or hardship for the resident(s). Defendants will pay each household the per diem rate for food for each resident, whether adult or minor.  For example, a household composed of two adults and three children would receive five (5) times the per diem rate for food.  Such payment will be made prior to the commencement of any retrofits on the resident's/residents' unit, so that the resident(s) can use the money to obtain food while dislocated.

54.    In the event that a resident of a unit scheduled to undergo retrofits incurs undue inconvenience or hardship (defined as a dislocation from the unit for more than twenty-four (24)

hours consecutively), and alternate accommodations are not provided consistent with Paragraph 53, Defendants will pay each adult resident the applicable government per diem rate for lodging for the local area for each 24-hour period of undue inconvenience or hardship for the resident(s). Defendants will also pay each household the per diem rate for food for each resident, whether adult or minor. Such payment will be made prior to the commencement of any retrofits on the resident's/residents' unit, so that the resident(s) can use the money to obtain alternative living accommodations and food while dislocated.

55. In the event that relocation of a resident or residents of a particular unit under the terms of Paragraphs 53 and 54 is either not agreed to by the resident or not feasible given the circumstances of the resident, Defendants will be relieved of the time limitation in which to complete the retrofits for that unit, and the retrofit inspection procedures described in Paragraphs 57-63 below can proceed without completion of the retrofits to that particular unit. The required retrofits must be completed to the unit when turned over for a new resident, or three months prior to the end of the current term of this Consent Order, whichever is sooner. Photographic evidence in compliance with the requirements of Appendices M and N of the retrofits performed at those specific units at any Subject Property pursuant to this paragraph shall be sufficient evidence of the retrofit absent inspection by the neutral inspector, as defined in Section VII.

## VI. NOTICE OF RETROFITS TO PUBLIC AND COMMON USE AREAS AT SUBJECT PROPERTIES

56. Within thirty (30) days of the entry of this Consent Order, each Defendant shall provide written notice to all residents at their respective Subject Property or Properties stating that the retrofits required by this Order will be performed to the public and common use areas of the Subject Properties, which include unit entrances and accessible routes. Such notices will conform to Appendix O. Each Defendant will certify to the United States in writing that the

notices have been distributed and the manner in which they were distributed within ten (10) days after such distribution.

## VII.    NEUTRAL INSPECTOR OF THE RETROFITS

57.    Each Defendant will enter into a contract with one or more neutral inspector(s) approved by the United States ("Inspector"), such approval not to be unreasonably withheld or denied, to conduct on-site inspections of the retrofits that have been performed under this Consent Order at the respective Subject Property to determine whether the retrofits have been completed in accordance with the specifications in this Order and the Surveyed Sections Retrofit Plan and the Unsurveyed Sections Retrofit Agreement (the Surveyed Sections Retrofit Plan and the Unsurveyed Sections Retrofit Agreement together hereinafter referred to as the "Retrofit Agreements").  The Inspector must have expertise in the Accessible Design Requirements of the FHA, including the HUD-recognized safe harbors, the ADA and ADA Standards, and UFAS.  The Inspector shall be unaffiliated with the Properties Surveyors hired pursuant to Paragraph 38, above.

58.    The Inspector shall inspect each Subject Property within thirty (30) days of the completion of all retrofits to all of the public and common use areas, and within thirty (30) days of the completion of all of the retrofits to the interiors of dwelling units.  Each Defendant will give the United States at least two (2) weeks' notice of the inspection and will give the United States an opportunity to have its representative present for the inspection, in accordance with any applicable COVID-19 Proclamations.

59.    The inspections will be conducted by the Inspector in accordance with this Consent Order and the Retrofit Agreements, which will be provided to the Inspector.

60.    The Inspector will detail the results of the inspection of each Subject Property, including incomplete or improperly completed retrofits, if any, in writing and will send that report

to counsel for the Defendant(s) whose Subject Property has been inspected and counsel for the United States within ten (10) days of the date of the inspection. The Inspector will take digital photographs of any deficiencies identified at each Subject Property and will include those photographs in the report. If the inspection report for any Subject Property indicates that not all the required retrofits have been made, each Defendant involved in the design and construction of that specific Subject Property, as set forth in Appendix A, will complete the retrofits within ninety (90) days and will schedule another inspection by the same Inspector to certify the retrofits have been corrected, which must occur within thirty (30) days of the completion of the work. Each Defendant will give the United States at least seven (7) days' notice of the inspection for its respective Subject Property and will give the United States an opportunity to have its representative present for the re-inspection, in accordance with any applicable COVID-19 Proclamations.

61.     The inspection and re-inspection process set forth herein will continue until the Inspector certifies that all the necessary retrofits have been made in accordance with the Surveyed Sections Retrofit Plan or Unsurveyed Sections Retrofit Agreement, as applicable. Defendants will pay all of their own and the Inspector's costs associated with these inspections of the Subject Property, and such payments will be made without regard to the Inspector's findings.

62.     An inspector's certification shall conclusively establish that the retrofits fulfill the requirements of this Consent Order.

63.     Upon reasonable notice to Defendants, representatives of the United States will be permitted to inspect the retrofits made by Defendants in accordance with this Consent Order, the Retrofit Agreements, and the Inspector's inspection reports provided for in this Consent Order to ensure compliance; provided, however, that the United States will endeavor to minimize any

inconvenience caused by such inspections and such inspections shall be subject to any prior notice requirements to residents and in accordance with any applicable COVID-19 Proclamations.

## VIII. TRANSFER OF INTEREST IN SUBJECT PROPERTIES

64.     The sale, foreclosure, or any other transfer of ownership, in whole or in part, whether voluntary or involuntary, of any of the Subject Properties shall not affect Defendants' continuing obligation to complete retrofits required by this Consent Order, unless and until the new ownership entity has been made a party to this Consent Order and agreed to assume all obligations under this Consent Order with respect to the Subject Property or Properties at issue.

65.     Should a Defendant sell or transfer ownership of any Subject Property, in whole or in part, or any portion thereof, prior to the completion of the retrofits and obligations specified in this Order and the Retrofit Agreements, the Defendant will at least thirty (30) days prior to completion of the sale or transfer: (a) provide to each prospective buyer written notice that the Subject Property is subject to this Order, including specifically the Defendant's obligations to complete required retrofits and to allow inspections, along with a copy of this Order; and (b) provide to the United States, by e-mail and first-class mail, written notice of the intent to sell or transfer ownership, along with a copy of the notice sent to each buyer or transferee, and each buyer's or transferee's name, address, and telephone number.

## IX. NO RAISING RENT PRICES

66.     Defendants with an ownership or management interest in a Subject Property, as well as their agents and affiliated companies, may not raise the rent price of any dwelling unit or demand any deposit or other fee for a dwelling unit at any Subject Property because of contemplated or completed retrofits pursuant to this Order in a dwelling unit.

## X. NON-DISCRIMINATION IN FUTURE DESIGN AND CONSTRUCTION

67.     For the duration of this Consent Order, Defendants will maintain and provide to the United States the following information and statements regarding multifamily properties under construction as of or constructed after the date of entry of this Consent Order and any other covered multifamily dwellings intended to be, or which actually are developed, built, designed, constructed, or engineered, in whole or in part, by any Defendant or by any entities in which any Defendant has a position of control as an officer, director, member, or manager, or has a ten-percent (10%) or larger ownership share, provided, however, that such information and statements need to be maintained and/or provided only on properties in which a Defendant is actually involved, not on those properties in which a Defendant bids or expresses an interest, but does not become finally involved:

a.     the name and address of the property, and a description of the property and the individual units;

b.     a copy of the substantially final plans for the property, including the civil engineering plans and architectural plans;

c.     the name, address, and telephone number of the civil engineer(s) involved with the project;

d.     a statement from the civil engineer(s) involved with the property acknowledging and describing his/her knowledge of and training in the requirements of the FHA and the ADA and in the field of accessible site design and certifying that he/she has reviewed the engineering documents for the property, and that the design specifications therein fully comply with

the requirements of the FHA, including one or more HUD-recognized safe harbors to the FHA, the ADA, and the ADA Standards;

e.  the name, address and telephone number of the architect(s) involved with the property;

f.  a statement from the lead architect(s) involved with the property, acknowledging and describing his/her knowledge of and training in the Accessible Design Requirements of the FHA and the ADA in the field of accessible site design and certifying that he/she has reviewed the architectural plans for the property, and that the design specifications therein fully comply with the requirements of the FHA, including one or more HUD-recognized safe harbors to the FHA, the ADA, and the ADA Standards; and

g.  if the engineering documents or architectural plans are substantially revised, and such revisions could have any impact on the accessibility of the covered multifamily dwellings or public or common area, each of Defendants will obtain, maintain, and provide to the United States upon request, a statement from the civil engineer(s) or architect(s) involved with the property that all specifications in the revised engineering documents or architectural plans, as pertinent, comply with the accessible design requirements of the FHA and the ADA.

68.  Defendants will take all actions to make the construction of any multifamily property under construction as of the date of entry of this Consent Order or constructed after the date of entry of this consent order, within the meaning of Paragraph 67 above, fully compliant with

the FHA and ADA. During the term of this Consent Order, upon reasonable notice, the United States will be permitted access to such properties to inspect for compliance with the FHA and the ADA, in accordance with any applicable COVID-19 Proclamations.

69.     Except as required by 42 U.S.C. § 3612(o), the United States agrees that it will not initiate a separate FHA or ADA action related to the design and construction of any properties encompassed by the requirements in Paragraphs 67-68 as long as the DOJ determines that an individual Defendant is engaging cooperatively in the process of remediating any identified accessibility barriers.

## XI. SETTLEMENT FUND AND PAYMENTS TO AGGRIEVED PERSONS

70.     Within thirty (30) days from the date of the entry of this Consent Order, Defendants collectively shall deposit in an interest-bearing escrow account the total sum of TWO HUNDRED THOUSAND DOLLARS ($200,000.00) for the purpose of compensating any aggrieved persons whom the United States determines was harmed by Defendants' alleged discriminatory housing practices (hereinafter "aggrieved persons"). This money shall be referred to as the "Settlement Fund." Within 15 days of the establishment of the Settlement Fund, Defendants shall submit proof to the United States that the account has been established and the funds deposited.

71.     Any interest accruing to the Settlement Fund shall become a part of the Settlement Fund and be used as set forth herein.

72.     Defendants shall be solely responsible for any taxes, costs, or other fees incurred by the Settlement Fund.

73.     Within forty-five (45) days of the entry of this Order, Defendants shall publish the Notice to Potential Victims of Alleged Housing Discrimination ("Notice") at Appendix P informing readers of the availability of compensatory funds. The Notice shall be no smaller than

three columns by six inches and shall be published on three occasions in hardcopy editions of The Times-Picayune / New Orleans Advocate, The Louisiana Weekly, and the New Orleans Tribune. The publication dates shall be separated from one another by at least twenty-one (21) days, and at least two of the publication dates shall be on a Sunday. The Notice shall also appear on three local news websites, to include nola.com, for at least three consecutive weeks. Within ten (10) days of each publication date, Defendants shall provide the hardcopy newspaper and containing the Notice and a copy of the Notice posted to the websites to counsel for the United States.

74. Within sixty (60) days of the entry of this Order, Defendants shall send a copy of the Notice at Appendix P to each of the organizations listed in Appendix Q.

75. Within four (4) months of the entry of this Order, each Defendants shall send, by first-class mail, postage pre-paid, or electronic means (electronic delivery shall only be made to residents whom Defendants have verified receipt and have responded to electronic communications in the past; all others shall receive delivery by mail), a copy of the Notice to each of its past or present tenant who resided at its Subject Property in the seven (7) years preceding the effective date of this Consent Order for whom they have records. Defendants will have complied with the requirements of this paragraph by mailing such notice to the last known forwarding address provided to the owners or managers of the Subject Properties or their agents by the former tenant at the time the former tenant moved out. Within six (6) months of entry of this Order, Defendants shall provide to counsel for the United States a declaration affirming that the Notice has been sent and a spreadsheet showing each addressee's name, address, address while living at a Subject Property, and date the Notice was sent.

76. Defendants shall permit the United States, upon reasonable notice, to review any records that may reasonably facilitate its determinations regarding the claims of alleged aggrieved persons.

77. Nothing in this Consent Order shall preclude the United States from making its own efforts to locate and provide notice to potential aggrieved persons.

78. Potential aggrieved persons shall have twelve (12) months from the date of the entry of this Order to contact the United States. The United States shall investigate the claims of allegedly aggrieved persons and make a preliminary determination of which persons are aggrieved and whether any amount of damages should be paid to each such person. The preliminary determinations of the appropriate amount of damages shall total no more than TWO HUNDRED THOUSAND DOLLARS ($200,000.00), plus any interest that has accrued in the account.

79. Defendants agree that the determinations of the United States regarding payments to aggrieved persons herein shall be final and Defendants hereby waive the right to contest the United States' determination in this or any other proceeding.

80. The United States shall submit its final recommendations to the Court for approval in the form of a Stipulated Order. Within thirty (30) days of the entry of a Court order providing for the distribution of funds, Defendants shall deliver to counsel for the United States, by overnight delivery, a separate check payable to each aggrieved person in the amount stated in the Stipulated Order.

81. In no event shall the aggregate of all such checks exceed the sum of the Settlement Fund of TWO HUNDRED THOUSAND DOLLARS ($200,000.00), plus accrued interest.

82. When counsel for the United States has received a check from Defendants payable to an aggrieved person and a signed release in the form of <u>Appendix R</u> from the aggrieved person,

counsel for the United States shall deliver the check to the aggrieved person and the original, signed release to counsel for Defendants. No aggrieved person shall be paid until he or she has executed and delivered such a release to counsel for the United States.

83.     If any money remains in the Settlement Fund after all aggrieved persons identified by the United States have been compensated, the remainder shall be paid to the United States Treasury in the form of an electronic funds transfer pursuant to written instructions to be provided by the United States.

## XII. CIVIL PENALTY

84.     Within fifteen (15) days of the date of this order, Defendants collectively will pay a civil penalty of FIFTY THOUSAND DOLLARS ($50,000.00) pursuant to 42 U.S.C. § 3614(d)(1)(C) and 42 U.S.C. § 12188(b)(2)(C)(i) to vindicate the public interest. The Defendants will divide the civil penalty amount among themselves and they are not obligated to report such division to the United States. This payment shall be in the form of an electronic funds transfer pursuant to written instructions to be provided by the United States. The civil penalty is a debt for a fine, penalty, or forfeiture payable to and for the benefit of the United States within the meaning of 11 U.S.C. § 523(a)(7), and is not compensation for actual pecuniary loss. No Defendant shall seek to discharge any part of this debt in bankruptcy.

## XIII. EDUCATIONAL PROGRAM

85.     Within thirty (30) days of the entry of this Order, Defendants will provide a copy of this Order to all their agents and employees involved in the design or construction of the Subject Properties or in the planning or development of other covered multifamily dwellings and secure the signed statement from each agent or employee acknowledging that he or she has received and

read the Order, or has had it explained to him or her, and has had an opportunity to have questions about the Order answered. This statement will be substantially similar to the form of <u>Appendix S</u>.

86. During the term of this Order, within thirty (30) days after the date he or she commences an agency or employment relationship with a Defendant, each new agent or employee involved in the design and construction of any covered multifamily dwellings will be given a copy of this Order and be required to sign the statement acknowledging that he or she has received and read the Order, or has had it explained to him or her, and has had an opportunity to have questions about the Order answered. This statement will be substantially similar to the form of <u>Appendix S</u>.

87. Defendants will also ensure that they and their employees and agents who have primary management authority over the design and/or construction of covered multifamily dwellings have a copy of, are familiar with, and personally review, the Fair Housing Accessibility Guidelines, 56 Fed. Reg. 9472 (1991) and the United States Department of Housing and Urban Development, <u>Fair Housing Act Design Manual</u>, <u>A Manual to Assist Builders in Meeting the Accessibility Requirements of the Fair Housing Act</u>, (August 1996, Rev. April 1998). Defendants and all employees and agents whose duties, in whole or in part, involve the management, and rental of multifamily dwellings at issue in this case will be informed of those portions of the FHA that relate to accessibility requirements, reasonable accommodations and reasonable modifications.

88. Within one hundred eighty (180) days of the date of entry of this Order, each Defendant and all of its employees and agents whose duties, in whole or in substantive part, involve or will involve primary management authority over the development, design and/or construction of multifamily dwellings will undergo training on the design and construction requirements of the FHA and the ADA. The training will be conducted by a qualified individual and approved by the United States in advance of the training, such approval not to be unreasonably withheld or denied,

and any expenses associated with this training will be borne by each Defendant. Each Defendant will provide to the United States, within thirty (30) days after the training, copies of the training outlines and any materials distributed by the trainers; and certifications executed by the respective Defendant and its covered employees and agents confirming their attendance, in a form substantially equivalent to <u>Appendix T</u>.

## XIV. NOTICE OF DEFENDANTS' NON-DISCRIMINATION POLICY

89. Within ten (10) days of the date of entry of this Consent Order, Defendants with an ownership or management interest in a covered multifamily dwelling will post and prominently display in the sales or rental offices of all covered multifamily dwellings owned or operated by them a sign no smaller than 10 by 14 inches indicating that all dwellings are available for rental on a nondiscriminatory basis. A poster that comports with 24 C.F.R. Part 110 will satisfy this requirement.

90. For the duration of this Consent Order, in all future advertising in newspapers, electronic media, pamphlets, brochures and other promotional literature regarding the Subject Properties or any new covered multifamily dwelling that any Defendant may develop or construct, such Defendant will place, in a conspicuous location, a statement that the dwelling units include features for persons with disabilities required by the FHA.

## XV. NOTIFICATION AND DOCUMENT RETENTION REQUIREMENTS

91. In addition to all other reporting required herein, within one hundred eighty (180) days after the date of entry of this Consent Order, each Defendant will submit to the United States an initial report containing the reporting required by paragraphs 85, 86, and 88, and containing the signed statements of such Defendant and their employees and agents who were provided a copy of the Consent Order under paragraphs 85 and 86 and who have completed the training program

specified in paragraph 88 of this Order. Thereafter during the term of this Order, Defendants will, on a quarterly basis, submit to the United States a compliance report detailing the retrofits and inspections of the retrofits at the Subject Properties under §§ III and IV. In addition, each year, on the anniversary of the entry of this Order, each Defendant will submit to the United States a report concerning the requirements in paragraph 67 concerning the future design and construction, and containing the signed statements of new employees and agents that, in accordance with paragraph 85 of this Consent Order, they have received and read the Order, and have had an opportunity to have questions about the Order answered, except that the last compliance report will be due sixty (60) days prior to the anniversary.

92.     For the duration of this Order, Defendants will advise the United States in writing within thirty (30) days of receipt of any written fair housing complaint concerning any property owned or managed by them, or against any employees or agents of Defendants working at or for any such property, regarding discrimination on the basis of disability. Upon reasonable notice, Defendants will provide the United States all non-privileged information it requests concerning any such complaint. Defendants will also advise counsel for the United States, in writing, within thirty (30) days of the resolution of any such complaint.

93.     For the term of this Order, Defendants are required to preserve records related to this Order, related to any design and construction at the Subject Properties, and related to the design and construction of any other covered multifamily dwellings that are designed and constructed during the duration of this Consent Order. Upon reasonable notice to Defendants, representatives of the United States will be permitted to inspect and copy any records of Defendants or inspect any properties or dwelling units under the control of Defendants bearing on compliance with this

Consent Order at any and all reasonable times; provided, however, that the United States will endeavor to minimize any inconvenience to Defendants and residents from such inspections.

## XVI. TERMINATION OF LITIGATION HOLDS

94.     The Parties agree that, as of the date of entry of this Order, litigation is not "reasonably foreseeable" concerning the subject matter of the United States' Complaint. To the extent that any Party previously implemented a litigation hold to preserve documents, electronically stored information, or things related to the matters described herein, the Party is no longer required to maintain such a litigation hold. Nothing in this paragraph relieves any Party of any other obligation imposed by this Order.

## XVII. DURATION OF CONSENT ORDER

95.     This Order will remain in effect for five (5) year(s) after the date of its entry, or until the Inspector certifies that all retrofits required by this Order and the Retrofit Agreements agreed to separately as required by this Order have been completed, whichever happens later. Any individual Defendant may request the United States' agreement to terminate the Consent Order as it applies to such individual Defendant after three (3) years have passed and such individual Defendant has received the certificate from the Inspector that all retrofits required by this Order and the Retrofit Agreements agreed to separately as required by this Order have been completed at the Subject Properties for which they were involved in the design and construction, as set forth in Appendix A. The United States' decision whether to agree or disagree to any such request is at its sole discretion.

96.     By consenting to entry of this Consent Order, the Parties do not disagree that in the event that any individual Defendant who engages in any future conduct occurring after entry of this Order that leads to a determination of a violation of the FHA by a court of competent

jurisdiction at the request of the United States, such conduct will constitute a "subsequent violation" pursuant to 42 U.S.C. § 3614(d)(1)(C)(ii). Any individual Defendant who engages in any future conduct occurring after entry of this Order that leads to a determination of a violation of the ADA, such violation(s) will constitute a "subsequent violation" pursuant to 42 U.S.C. § 12188(b)(2)(C)(ii).

97. The Court will retain jurisdiction for the duration of this Order to enforce the terms of the Order, at which time the case will be dismissed with prejudice. The United States may move the Court to extend the duration of the Order in the interests of justice, upon reasonable notice to Defendants, and upon good faith efforts among the parties to avoid such an extension.

98. All parties will endeavor, in good faith, to resolve informally any differences regarding interpretation of and compliance with this Order prior to bringing such matters to the Court for resolution. However, in the event of a failure by a Defendant to perform, in a timely manner, any act required by this Order or to act in conformance with any provision thereof, the United States may move this Court to impose against the defaulting Defendant any remedy authorized by law or equity, including, but not limited to, an order requiring performance of such act or deeming such act to have been performed, and an award of any damages, costs, and reasonable attorney fees which may have been occasioned by the Court's finding of a violation or failure to perform.

99. An individual Defendant's compliance with the terms of the Order shall fully and finally resolve all FHA and ADA claims of the United States related to the individual Defendant's alleged violation of the FHA or ADA based on the design and construction of the Subject Properties in which that Defendant was involved as set forth in Appendix A, up through and

including the dismissal date of the Consent Order, including but not limited to any and all claims for equitable relief and for monetary damages and/or penalties.

## XVIII. TIME FOR PERFORMANCE

100.    Any time limits for performance imposed by this Consent Order may be extended by the mutual written agreement of the United States and the Defendants, or with regard to an issue impacting only an individual Defendant with such individual Defendant.

101.    If any Defendant claims that extension of the time for performance for any part of this Consent Order is warranted because of COVID-19 Conditions, as defined herein, the United States and the relevant Defendant(s) shall follow the process set forth in Paragraph 98 to resolve any disagreements between them regarding whether or to what extent an extension is appropriate, such extension(s) not to be unreasonably withheld or denied.  "COVID-19 Conditions" mean conditions attributable to COVID-19 not caused by Defendants and beyond Defendants' control, such as COVID-19 Proclamations[7], supply chain disruptions, spikes in commodity prices, and other similar circumstances not caused by Defendants and beyond Defendants' control.

New Orleans, Louisiana, October 5, 2022.

_____
**Lance M. Africk**
United States District Judge
Eastern District of Louisiana

---

[7] "COVID-19 Proclamations" mean any and all directives, proclamations, and guidelines that have been issued and may be issued in the future by public bodies having jurisdiction over the Subject Properties.